James A. Dixon, Plaintiff, *v.* Tony Talerico, Defendant.

County Court, Oneida County, March 21, 1928.

Receivers — allowance for disbursements — receiver in action to foreclose land contract was defeated in his litigation affecting property owned by judgment debtor's wife — court made no order directing receiver to contest claims — receiver is not entitled to costs and disbursements.

In this action to foreclose a land contract covering the sale of a farm and property thereon, the receiver, who was directed to take possession of the property and preserve it during the pendency of the action, having been defeated in his litigation affecting certain claims to property owned by the judgment debtor's wife, seeks to be paid his costs and disbursements incurred in that litigation.

Since the court made no order directing the receiver to contest the claim or to sell the property which the judgment debtor's wife claims, he proceeded at his own risk as to his costs and disbursements in selling said property. Therefore, the fund in the hands of the receiver, which is the product of the sale of the wife's property, is not subject to the receiver's fees and expenses but should be applied as a whole toward the payment of the judgment which she has obtained against him for wrongfully converting her property.

Accounting by George J. Skinner as temporary receiver.

*R. S. & Smith Johnson,* for the plaintiff and the receiver.

*Rocco Calli,* for the defendant and Josephine Talerico, a judgment creditor of the receiver.

Hazard, J. This action was brought to foreclose a land contract, covering the sale of a farm and some personal property thereon and upon which it was claimed the plaintiff had a lien as security for the payment of the contract price. Pending the foreclosure, the plaintiff made an affidavit, the principal part of which was as follows: " That the defendant has been and is now committing waste upon said premises in the cutting of trees and the removal

of wood and timber therefrom, and continues so to do, and threatens to remove from said premises the personal property thereon, to this plaintiff's great and irreparable damage. That said premises and the personal property thereon are of the fair and reasonable market value of not to exceed the sum of $7,000; that there is due, unpaid and owing from defendant to plaintiff the sum of over $9,000." Thereupon I signed an order appointing said Skinner receiver, which order contained the following: " That said receiver take possession of said personal property and premises, to preserve and hold the same during the pendency of this action until the further direction of this Court, being for said purpose invested with the usual powers as a receiver." The judgment appointed George J. Skinner, the temporary receiver, as referee, and directed him first to sell the farm and provided that, in case a deficiency remained, he was " hereby ordered and directed to sell sufficient of the personal property to satisfy any such deficiency herein." Pursuant to the judgment, the farm was sold. A deficiency remained, and efforts on the part of the receiver and referee to sell the personal property developed a claim on the part of the defendant's wife that she owned substantially all of the live stock, farming tools and other personal property on the farm. Thereupon numerous motions, orders, actions, appeals, hearings, trials and other legal proceedings ensued. It is not my purpose to recount the same here but, after very numerous appearances in various courts and before various judges, the receiver, as such, sold at auction the said personal property, realizing therefrom a total of $2,133.60.

It may be stated here that the receiver had neither asked for nor received any instructions from the court other than those which are outlined above. Some efforts are made in the briefs and arguments filed and made in this proceeding, to make a contrary claim and to endeavor to raise the point that the instructions contained in the judgment and order appointing the receiver amount to a direction on the part of this court, and a warrant for the receiver's action. This position is not tenable. The appointment of Mr. Skinner as temporary receiver of the personal property on the farm, while it is true that the order did not by its terms, as it should have, confine itself to the personal property of the defendant, it was by me understood to mean just that, and as a matter of law could not, I think, possibly mean anything different. There was no claim made by the plaintiff against the defendant's wife, and she was not even a party to the foreclosure action.

Exactly the same thing may be said of the above-quoted provision which was inserted in the judgment. It is to be kept in

mind, in this connection, that at the time the order appointing the receiver was made and the judgment rendered, no claim had been made by or on behalf of the defendant's wife to ownership of the personal property. Of course, there was no real reason why such a claim should be advanced until later, when the receiver attempted to sell what she claimed was her property. Dating from the time of that attempt, very numerous and definite claims were made by the wife, resulting in some postponements of the sale and later, after the property which she claimed was sold, she brought an action in the Supreme Court for conversion against the receiver, and recovered in that action a judgment for a total of $2,332.12, a sum somewhat in excess of the amount realized by the receiver from the sale of her goods.

In the meantime and in the process of defending these various legal proceedings but briefly referred to hereinbefore, and of conducting and advertising the several sales of the personal property, which had been adjourned as a result of various injunctions and restraining orders, the receiver has incurred expenses totalling $1,328.40. He now seeks to have his expenses allowed to him out of what he calls " the fund." The defendant's wife, who has the judgment against the receiver above referred to, objects to the allowance of the receiver's expenses for selling what has been adjudged to have been her own personal property and for carrying on the litigation with her. It is to be observed in this connection that there is no other property anywhere in sight which is likely to come into the possession of the receiver and, if the items of the receiver's expenses are allowed, they must be paid out of proceeds which were received from the sale by the receiver of the defendant's wife's property. Incidentally, it is obvious that, even if no expenses are allowed to the receiver, and no commissions, there are not enough funds in his hands to pay the judgment which the defendant's wife has recovered against him as receiver.

The situation may be stated in another way by saying that the receiver, having made certain claims to certain property owned by the judgment debtor's wife, and having litigated those claims and having been defeated in his effort, still feels that he is entitled to be paid his disbursements incurred in making the effort, in short, in his litigation with the judgment debtor's wife. He bases this claim upon the fact that he is an officer of the court and claims to have been acting to some extent under direction of the court. I will repeat that there were no directions given to him, except the very general terms of his appointment and the direction contained in the judgment, both of which occurred before any conflicting claims were raised by or on behalf of the defendant's wife.

We have thus the question of whether this receiver, having attempted to take possession of certain property and having been defeated in the effort, may still, at the expense of the real owner of the property, reimburse himself for the items of his losing fight. I have given the situation considerable thought and made considerable research among the cases, and do not find anything very definitely or clearly in point. Some which have been cited are cases in which directions to sell have been given by the court. The principal authority cited on behalf of the receiver is the case of *Hopfensack* v. *Hopfensack* (61 How. Pr. 498). I think that case is to be differentiated. In the first place, it arose in the settlement of a copartnership, in the course of which an action was brought and a receiver appointed of the effects of the copartnership. It transpired that some of the property was not owned by the firm, in which respect the case is quite similar to the one at bar. However, it seems clear that the court had directed the receiver to take certain specified property, which the receiver did, as witness the following (from p. 499): " The referee reported on February 18, 1880, that all the property taken by the receiver was the property which it was intended by said orders he should take possession of." Again (on p. 507) it was said of two of the defendants that they were bound " under the order appointing a receiver, which was warranted by the allegations of the complaint, to surrender the property, even though it was their own, to the officer of the court." Also it is said (commencing on p. 506): " Upon the complaint it was competent for the court to appoint a receiver of all the property claimed by the plaintiff, even though a part of it might be in the possession of and be claimed by Ernst Hopfensack and Hraba, who never were partners of the plaintiff." There follows (p. 508) what would seem to be an adjudication in favor of the receiver, in the following language: " I think there is no question as to the right of the court to award to the receiver compensation out of the fund which he holds, even though the title to that fund be found to have been from the first, and to be now in the defendants. The receiver's compensation cannot be made to depend upon the result of the litigation. He is the officer of the court who takes property, the right to which is involved in dispute, and *by order of the court* holds it for the benefit of the party who shall ultimately be found to be entitled to it." If this language is to be taken literally and as the law involved in the case, it certainly seems to warrant the claims of the receiver. I think, however, the case should be differentiated from 'ours in this, that in that case the receiver had been ordered by the court to take certain property. That is indicated by the italicized words in the foregoing quotation (the

italics being mine), also by the following (p. 509): " The court is not to blame, nor is the receiver *who obeys its order*. The property in the hands of the receiver is the fund from which his fees must be paid." I think the case is to be considered as authority for the proposition that, if the court directs a receiver to take certain specified property, the receiver may be allowed his fees and expenses for complying with the court's order, even if those fees and expenses must come out of the proceeds of property which it has been decided all the time belonged to somebody else. The rule, as stated, certainly involves a hardship to the successful litigant who establishes title to property which a receiver has been directed to take. I do not think the rule should be extended any distance at all.

In the case at bar, it seems to me that, after the dispute with reference to the possession of the property had developed, the receiver should have called for instructions and directions. There never was any intention on the part of the court, in this case, to authorize the taking, much less the sale, of property, the title to which was in dispute, and no order has been made by me since the dispute arose, authorizing or directing the receiver to go ahead and contest the claims of the defendant's wife or to sell property which she claimed. Under such circumstances it seems to me that the receiver proceeded at his own risk and that, for the want of such instructions, he is not protected by the decision in the *Hopfensack* case.

Neither is it at all clear that the court would have had any power to make any such an order and I think the decision in the *Hopfensack* case is much weakened, if not entirely destroyed, by the subsequent case of *Brush* v. *Jay* (113 N. Y. 482). The court says (at p. 484): " The authority of the court over such assets of the firm, as are either admitted by the pleadings or are judicially determined to be in the firm, is undoubted; but the power to order a sale of all property in the possession of a firm, which, in the usual course of business is frequently the custodian of the property of others, *upon the mere fact of such possession*, is not, we think, sustainable upon reason or authority, and its exercise is likely to produce manifest and irreparable wrong and injustice. We do not think the Special Term had author ty to take up on motion one of the material issues of the case, and, under objection by one of the parties, make an order, which was practically a final judgment, in respect to the property involved in such issue." It is to be observed that this court did not undertake to decide, upon affidavits or otherwise, whether the personal property on the farm belonged to defendant Tony Talerico, or to his wife, and, certainly, no direction was ever given to sell the property of any one, or to take any property other than the defendant's.

It is to be kept in mind that the receivership was only temporary and it has been said that a temporary receiver does not possess the powers of a permanent receiver unless specially conferred upon him by order of the court. (*Decker* v. *Gardner*, 124 N. Y. 334, 338.) In *Clapp* v. *Clapp* (38 Hun, 540) (a case decided before the decision in *Brush* v. *Jay*), the *Hopfensack* case is cited with apparent approval as applied to " funds which form part of the estate covered by his appointment," but it is said that in such a case, while the court has power to audit the fees paid out of the fund, it is discretionary " whether the power shall be exercised or not." In *Bowe* v. *U. S. Reflector Co.* (36 Hun, 407, 412) the *Hopfensack* case is referred to and distinguished, and the distinction there pointed out is important here, as here as well as in that case the property was not held " for the benefit of all the parties to the controversy." No one can claim that the holding by the receiver was in any sense for the benefit of Mrs. Talerico, or any one at all except the plaintiff in this action. Another case in point is *Matter of Atlas Iron Construction Co.* (19 App. Div. 415), in which case (on p. 417) the court holds: " Where there was a specific lien upon the property created before the receiver took possession, and where the receiver's possession is subordinate to that lien, the lienor's interest not vesting in the receiver, then, of course, the lien comes in ahead of the receiver's claim for compensation or disbursements." That situation seems analogous to the one at bar. Later, on the same page, the court points out the following: " Where, however, that lienor *was a party to the proceeding,* and where the receiver is ordered to take into his possession the property of the lienor as well as of the former owner, to protect that property for the lienor and others interested in it, then the lienor's interest becomes chargeable with the proportion of the expenses necessary to protect the property or to change it into money for the lienor's benefit." As I have endeavored to point out heretofore, no such a situation arose here and the receiver was acting wholly and solely for the benefit of the plaintiff Dixon.

I, therefore, feel compelled to hold that the receiver, in going ahead and selling property after a dispute as to the title had arisen, and without any directions of the court, proceeded solely and only for the benefit and interest of the plaintiff and at his own risk as to his costs and disbursements and fees. To hold otherwise would, it seems to me, create an extremely dangerous precedent. If any receiver, in supplementary proceedings or otherwise, can, because he happens to consider himself an officer of the court, lay claims to any property which may be in sight, and without obtaining any directions of the court, or any bond or other pro-

tection from the party really in interest, proceed to sell the property of some third person, and do so entirely at that third person's risk as to expenses, a situation would arise in which nobody's property rights would be safe from such attacks. I do not think that is the law or that it should be the law and I must, therefore, rule that the fund in the hands of the receiver, which is the product of the sale of the defendant's wife's property, is not subject either to the receiver's fees or expenses but should be applied as a whole toward the payment of the judgment which she has obtained against him for wrongfully converting her property.

An order may be prepared accordingly.